UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YATAYE HURSKIN,

     Plaintiff,

v.                                            Case No: 8:15-cv-253-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## ORDER

Plaintiff, Yataye Hurskin, seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits, and supplemental security income. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.     Procedural Background

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on April 29, 2011. (Tr. 22.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 22.) Plaintiff then requested an administrative hearing. (Tr. 22.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 22.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 19–35.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–

3.)  Plaintiff then timely filed a complaint with this Court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1981, claimed disability beginning on January 1, 2009, and later amended the alleged onset date to May 5, 2011.  (Tr. 22, 33.)  Plaintiff has a high school education.  (Tr. 33.)  Plaintiff has no past relevant work experience.  (Tr. 33.)  Plaintiff alleged disability due to a learning disability, schizophrenia, anxiety, asthma, and obesity.  (Tr. 28.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since May 5, 2011, the amended alleged onset date.  (Tr. 24.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: obesity, mood disorder, conduct disorder, schizoaffective disorder, learning disorder, and asthma.  (Tr. 24.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 25.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk up to six hours in an eight-hour workday; sit up to six hours in an eight-hour workday; frequently climb, balance, stoop, kneel, crouch, and crawl; and frequently reach overhead, bilaterally.  (Tr. 27.)  The ALJ included the following limitations in Plaintiff's RFC: avoid concentrated exposure to environmental irritants, such as dust, odors, fumes, gases, and poorly ventilated areas; limited to simple and routine tasks; limited to occasional interaction with supervisors and co-workers; and limited to isolation from the general public.  (Tr. 27.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined

that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 28.)

As noted, the ALJ determined that Plaintiff did not have any past relevant work.  (Tr. 33.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as officer helper, hotel housekeeper, or officer mail clerk.  (Tr. 34.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 34–35.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the Social Security Administration promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions;

(3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ substituted her opinion for the opinion of a medical expert; and (2) the ALJ failed to pose a complete hypothetical question to the vocational expert.   For the reasons that follow, none of these contentions warrants reversal.

## A.      Medical Opinion

Plaintiff contends that the ALJ erred by substituting her opinion for the opinion of a medical expert by discounting a medical opinion regarding Plaintiff's mental limitations. Specifically, Plaintiff argues that the ALJ erred by discounting Plaintiff's IQ score of 54, which satisfies the requirement under Listing 12.05 for intellectual disability.

Medical opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment.  20 C.F.R. § 404.1527(a)(2).  When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.  *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).  Typically, the ALJ must afford the opinion of a treating physician substantial or

considerable weight unless "good cause" is shown to the contrary.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted).  However, the ALJ does not have to defer to the opinion of a physician who conducted a single examination and who was not a treating physician.  *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987).  Ultimately, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Listing 12.05 applies to intellectual disability, which "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05.  The required level of severity under Listing 12.05 is met if the claimant can establish any of the following: (1) mental incapacity evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; (2) a valid verbal, performance, or full scale IQ of 59 or less; (3) a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or (4) a valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05.

Here, Plaintiff argues that the ALJ improperly rejected Plaintiff's IQ score of 54.  Notably, however, Listing 12.05 requires a valid IQ score.  The ALJ is not required to rely on the results of

an IQ test alone in determining intellectual disability. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986). Rather, the ALJ must consider the test results in conjunction with the other evidence in the record and must examine the test results to "assure consistency with daily activities and behavior." *Id.* Indeed, even a valid IQ score need not be conclusive of intellectual disability where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

Further, because "the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. § 12.00(D)(6)(a); *see also Popp*, 779 F.2d at 1499 (noting the importance of the narrative report that accompanies a claimant's IQ score in considering whether the IQ score is valid). As such, "[r]eports that do not include the quantum of medical evidence required to document whether the results of the intelligence test were consistent with the plaintiff's daily behavior are given less weight than those that make the required specific findings regarding [the] plaintiff's mental condition, and extensively discuss [the plaintiff's] personal and medical history and current lifestyle in support of the findings." *Siron v. Comm'r, Soc. Sec. Admin.*, 556 F. App'x 797, 799 (11th Cir. 2014) (internal quotation, alterations, and citation omitted).

On July 19, 2001, licensed psychologist Dr. Richard L. Sorensen completed a neuropsychological evaluation of Plaintiff upon referral for a learning disabilities and personality evaluation by a vocational counselor. (Tr. 353–357.) Dr. Sorensen completed the following tests on Plaintiff: Wechsler Adult Intelligence Scale-III (WAIS-III), Wide Range Achievement Test-3 (WRAT-3), Beck Depression Inventory-II (BDI-II), Bender Visual Motor Gestalt Test (Bender-Gestalt), and Rotter Incomplete Sentences Blank (RISB). (Tr. 354.) Based on the test results and

Plaintiff's full scale IQ of 74, Dr. Sorensen opined that Plaintiff measured within the borderline range of intellectual functioning, with achievement scores that are generally consistent with measured ability level, no evidence of perceptual-motor disturbance, no endorsement of symptoms of depression, and personality projections that were generally benign and positive. (Tr. 356.) He diagnosed Plaintiff with a learning disorder and borderline intellectual functioning. (Tr. 357.)

Ten years later, on March 29, 2012, Dr. Sorensen completed a psychological evaluation of Plaintiff. (Tr. 609–613.) He performed the following tests on Plaintiff: Wechsler Adult Intelligence Scale-IV (WAIS-IV), Woodcock-Johnson Tests of Achievement-III (WJ-III ACH), Beck Depression Inventory-II (BDI-II), and Substance Abuse Subtle Screening Inventory-3 (SASSI-3). (Tr. 610.) Based on the test results and Plaintiff's full scale IQ of 54, Dr. Sorensen opined that Plaintiff measured in the extremely low average range of intellectual functioning, with achievement scores that reflected weakness on all measures but showed relative strength on measures involving range of verbal information and range of general information. (Tr. 611.) He opined that this likely results in a tendency for others to overestimate Plaintiff's ability level. (Tr. 611.) He diagnosed Plaintiff with mild mental retardation, schizoaffective disorder, posttraumatic stress disorder, panic disorder, and antisocial personality disorder. (Tr. 612.)

In her decision, the ALJ found that Plaintiff did not have a valid full scale IQ score to meet the requirements under Listing 12.05. (Tr. 26.) In making this finding, the ALJ thoroughly recounted Plaintiff's psychological evaluations with Dr. Sorensen in July 2001 and March 2012. (Tr. 25, 30, 33.) After considering the evidence, however, the ALJ gave little weight to Dr. Sorensen's opinion, finding that his opinion was inconsistent with the record and finding that his statements about Plaintiff's ability to pursue training or employment were conclusory in that he offered very little explanation of the evidence he relied on in forming his opinion. (Tr. 33.) The

ALJ took particular issue with Dr. Sorensen's assessment of Plaintiff's IQ score, finding that the full scale IQ of 54 was not an accurate representation of Plaintiff's intellectual abilities and finding that the twenty-point drop between the July 2001 IQ score of 74 and the March 2012 IQ score of 54 "seems implausible considering there is no evidence of brain injury or any other event that would cause such a change" and considering Plaintiff's testimony that "she lives by herself, obtained her GED, and passed examination to become a Certified Nursing Assistant (CNA), all which indicates that claimant is capable of skills beyond the results from her recent IQ testing." (Tr. 25.)

Upon review of the record, the Court finds that the ALJ properly evaluated Dr. Sorensen's opinion.  Aside from Dr. Sorensen's opinion in March 2012, no other medical source made findings regarding Plaintiff's intellectual disability to indicate that this impairment rose to a listing level of severity.  While Plaintiff's mental health records and evaluations contain spaces where providers could indicate whether Plaintiff had an intellectual impairment, no such impairment, limitation, or disability was noted.  (Tr. 401, 421, 465, 529, 530, 536–537, 557, 630–631, 673, 773.)  Indeed, Dr. Linda Appenfeldt, a psychologist who performed a consultative exam of Plaintiff in June 2011, opined that Plaintiff could perform work-related mental activities involving understanding, memory, sustained concentration and persistence, and adaptation.  (Tr. 538.)  On August 30, 2012, just a few months after Dr. Sorensen's evaluation, psychiatrist Dr. Randolph Hemsath performed a psychiatric evaluation of Plaintiff and noted that Plaintiff's intellect was below average, but he did not diagnose Plaintiff with intellectual disability or make any statements showing a severe impairment in Plaintiff's intellectual functioning.  (Tr. 673–674.)

After reviewing the evidence of record, state agency psychological consultants Dr. Adrine McKenzie, Dr. Martha Putney, and Dr. Deborah Carter also found that Plaintiff did not meet the

requirements under Listing 12.05.  (Tr. 402, 541, 564.)  Specifically, Dr. Putney considered

Plaintiff's ability to care for herself independently and perform daily activities and opined that

Plaintiff was not intellectually disabled and was capable of performing at least mildly complex

tasks given her low average IQ. (Tr. 414.) Dr. Putney further opined that "no definitive assessment

of IQ can reliably be made in the absence of complete and sustained sobriety" and that "it is easy

to fake bad on the WAIS, so in the absence of any malingering assessment, it is impossible to

know the extent to which the scores are credible." (Tr. 414.)  Dr. McKenzie opined that Plaintiff

could follow instructions, carry out activities of daily living, sustain attention, and carry out

detailed instructions. (Tr. 541, 557.) Dr. Carter opined that Plaintiff could concentrate to complete

tasks and activities, travel independently, pursue interests and hobbies, socialize appropriately,

cope with routine activities, adapt to change, avoid common hazards, and perform simple and

routine tasks and cooperate with others in work settings.  (Tr. 562.)  Plaintiff does not challenge

the weight afforded to these medical opinions.

        Additionally, the ALJ considered Plaintiff's daily activities and behavior in discrediting

her subjective complaints and in finding that the results of her IQ test were not credible.

Specifically, the ALJ referenced Plaintiff's ability to live by herself, obtain her GED, pass her

nursing assistant certification exam, take public transportation, and manage her personal care

needs.  (Tr. 25–26.)   The ALJ also referenced Dr. Appenfeldt's opinion that Plaintiff had

exaggerated or magnified the severity of her impairments to obtain financial compensation for

herself. (Tr. 29, 538.) The ALJ also relied on Plaintiff's behavior at the hearing and her repeatedly

vague responses to questions, Plaintiff's contradicting statements regarding her abilities and

limitations, and Plaintiff's daily activities.  (Tr. 31–32.)  *See Siron*, 556 F. App'x at 799 (stating

that the evidence presented in cases where the court has affirmed an ALJ's rejection of an IQ score

"overwhelmingly indicated that the claimant was not [intellectually disabled] and likely attempted to tailor results to effect a desired outcome").  Plaintiff does not challenge the weight afforded to Dr. Appenfeldt's opinion or the ALJ's determination of Plaintiff's credibility.

The ALJ was not required to defer to Dr. Sorensen's opinion, as it was an opinion rendered by a non-treating physician who examined Plaintiff twice in a span of ten years.  *See Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 489 (11th Cir. 2012) (finding that the ALJ was not required to defer to a physician's opinion because the physician only examined the claimant on a single occasion and did not treat him).  Further, the ALJ did not arbitrarily substitute her own opinion for that of a medical opinion.  *See Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992) (stating that an ALJ "may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional").  Rather, the ALJ articulated her reasons for discrediting Dr. Sorensen's opinion and the IQ score in particular, and her proffered reasons for discounting the IQ score are supported by substantial evidence given that the other medical evidence in the record undermined the validity of the score.  *See id.* at 841 (stating that an ALJ can legitimately discount a physician's diagnosis only after clearly articulating his or her reasons for such action).

Furthermore, the ALJ was not, as Plaintiff argues, required to re-contact Dr. Sorensen for clarification of the test results, as the ALJ reasonably concluded that the record was adequate to render a disability determination given the other evidence undermining Plaintiff's IQ score.  *See* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (stating that the ALJ can re-contact a doctor to resolve an inconsistency or insufficiency in the evidence).  Similarly, although there is a distinction between the WAIS-III and the WAIS-IV, which may possibly account for the differing scores, the regulations do not endorse a specific edition of the WAIS or discuss the significance of differing test scores on different editions of the same test.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing

12.00(D)(6)(c) (mentioning "the Wechsler series").   Therefore, the ALJ must consider the evidence as a whole and evaluate the test results in conjunction with other medical evidence.  *Popp*, 779 F.2d at 1499.   Moreover, as discussed below, Dr. Sorensen's assessment of Plaintiff's perceptual reasoning, working memory, or processing speed does not equate to a finding of marked limitation or an inability to perform other work.  *See Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) ("The opinion of the treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence or is merely conclusory"); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

Based on the above, the ALJ properly gave little weight to Dr. Sorensen's opinion and properly discounted the results of Plaintiff's IQ test because they were inconsistent with the other medical evidence, Plaintiff's daily activities, Plaintiff's testimony, and Plaintiff's behavior.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 924 (11th Cir. 2007) (finding that the ALJ did not substitute his judgment for that of a physician but rather determined that the physician's opinion was inconsistent with objective medical evidence in the record); *Popp*, 779 F.2d at 1500 (finding substantial evidence in the record to support the ALJ's finding that the results of the IQ test were not credible "because they were inconsistent with other evidence and because there was good reason to believe that [the plaintiff] exaggerated his problems).

## B.      Incomplete Hypothetical Question

Plaintiff contends that the ALJ erred by posing an incomplete hypothetical question to the vocational expert and by relying on the vocational expert's response to the incomplete hypothetical question in finding Plaintiff not disabled.   Specifically, Plaintiff argues that the ALJ failed to

include Plaintiff's limitations in perceptual reasoning, working memory, and processing speed.

If the ALJ finds that the claimant is able to perform other work, then the ALJ "must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227. One way in which the ALJ may determine whether the claimant is able to perform other jobs is by posing a hypothetical question to a VE. *Id.* "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* Nevertheless, the ALJ's hypothetical need not include a claimant's asserted impairments that are not supported by medical evidence or that are controlled or alleviated by medication. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007). Further, "[t]he hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant." *Id.*

Here, the ALJ posed the following hypothetical question to the vocational expert, Mr. Harold Steinberg:

> In this first hypothetical, Mr. Steinberg, the individual would have no exertional limitations, but would be limited non-exertional to simple and routine tasks; to occasional interaction with supervisors, co-workers, and the general public; and this individual would need to avoid concentrated exposure to environmental irritants like fumes, odors, dusts, gases, poorly ventilated areas, and things of that nature. Based on those limitations, would other work exist in the national and regional economies?

(Tr. 87.)  Based on this, Plaintiff contends that the ALJ only included Plaintiff's limitation to simple and routine tasks in her hypothetical question to the vocational expert and failed to include Plaintiff's limitations in perceptual reasoning, working memory, and processing speed. However, the only medical opinion that specifically addressed Plaintiff's limitations in perceptual reasoning, working memory, or processing speed was the opinion of Dr. Sorensen in March 2012, which

provided the WAIS-IV index scores for verbal comprehension, perceptual reasoning, working memory, processing speed, and full scale IQ.  (Tr. 611.)  As discussed above, the ALJ properly weighed Dr. Sorensen's opinion and the validity of Plaintiff's test results.  Therefore, the ALJ was not required to include these specific limitations that were based on a single examination by a non-treating physician, especially when no other medical sources made similar findings.  Further, in 2013, Plaintiff did not indicate any problems with focus, concentration, or memory.  (Tr. 776.)

Here, the ALJ was not required to include limitations for every symptom alleged in her hypothetical question to the vocational expert.  Rather, the ALJ was required to include the Plaintiff's impairments, and only those impairments that were supported by medical evidence.  *See Winschel*, 631 F.3d at 1180 (noting that "hypothetical questions adequately account for a claimant's limitations . . . when the questions otherwise implicitly account for [the] limitations"); *Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 315 (11th Cir. 2007) (finding that the plaintiff's "additional claimed impairments that were not supported by objective medical evidence did not need to be included in the hypothetical").  Nonetheless, the ALJ's hypothetical question, which included a limitation to simple and routine tasks, adequately accounts for Plaintiff's low scores in verbal comprehension, perceptual reasoning, working memory, and processing speed.  A limitation to simple and routine tasks implicitly accounts for such limitations and the findings in the medical record that consistently suggest that Plaintiff is able to complete simple and routine tasks.  (Tr. 356, 412, 416, 418, 526, 538, 555, 557, 560, 562, 574, 630, 772.)

Further, the ALJ properly accounted for Plaintiff's mental limitations and cognitive impairments, namely her learning disorder and the symptoms associated by her disorder, by limiting Plaintiff to simple and routine tasks.  (Tr. 27.)  *See Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 625 (11th Cir. 2012) (finding that although the ALJ did not expressly include all of

the plaintiff's conditions, the RFC adequately accounted for the limitations imposed by the plaintiff's condition); 20 C.F.R. § 404.1527(d)(2) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."). Therefore, the ALJ's hypothetical question to the vocational expert was complete in that it included Plaintiff's credible and medically supported impairments, and it sufficiently accounted for Plaintiff's credible limitations.

**CONCLUSION**

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.   The decision of the Commissioner is **AFFIRMED**.

2.   The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on March 3, 2016.

_____

JULIE S. SNEED

UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record